-- U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 MAY 31 PM 2:31

CLERK

BY _____ 
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

KINDRED NURSING CENTERS EAST,    )
LLC d/b/a KINDRED TRANSITIONAL    )
CARE AND REHABILITATION –    )
BIRCHWOOD TERRACE,    )
   )
   Plaintiff,    )
   )
   v.    )    Case No. 5:16-cv-73
   )
ESTATE OF BARBARA L. NYCE,    )
KINSLEY F. NYCE, and ROGER G.    )
NYCE,    )
   )
   Defendants.    )

**DECISION ON MOTION TO DISMISS OR STRIKE, CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT, AND MOTION FOR LEAVE TO FILE SECOND AMENDED
COMPLAINT**
(Docs. 74, 78, 83)

This case is a dispute between a nursing home (Plaintiff Kindred Nursing Centers East,

LLC ("Kindred")); the Estate of Barbara Nyce; and Roger and Kinsley Nyce, sons of Barbara

Nyce, who received care from Kindred before her death on May 25, 2015. Alleging fraudulent

conveyance and breach of contract, Kindred originally sought to recover a substantial balance

owed for nursing home care provided to Barbara Nyce. Kindred alleges that the sons made use

of a power of attorney during the last years of their mother's life to enrich themselves at her

expense.

Three motions are currently pending. First, Kindred seeks to strike or dismiss the

counterclaims against it. (Doc. 74.) Second, the Estate[1] seeks partial summary judgment as to

_____

[1] Unless otherwise noted, the court refers to the "Estate" here in the Estate's capacity as
defendant against Kindred's claims, in which capacity it is represented by Attorney John Franco.

paragraphs 42 and 43 in Kindred's Amended Complaint. (Docs. 77, 78.) Third, Kindred seeks

to file a Second Amended Complaint which sets forth a single cause of action under the Vermont

Fraudulent Transfer Act, 9 V.S.A. §§ 2285–2295. (*See* Doc. 83-4.) Before addressing those

pending motions, the court pauses briefly to address jurisdictional and real-party-in-interest

questions that it asked the parties to brief.

## I.     Jurisdiction and Real Party in Interest

In an Entry Order filed on March 28, 2017, the court expressed concern regarding subject

matter jurisdiction in this case, as well as whether Kindred is the real party in interest. (Doc. 88.)

The parties have filed memoranda at the court's request. (Docs. 90, 91, 92, 93.) The court

appreciates the parties' attention to these concerns, and sets forth its conclusions below.

### A.     Diversity Jurisdiction

All parties agree that there is complete diversity in this case. (Doc. 90 at 1; Doc. 91 at 1;

Doc. 92 at 1.) The court sees no basis for concluding otherwise.

Regarding the amount in controversy, the proposed Second Amended Complaint

(Doc. 83-4) seeks less than the $75,000 sum that is necessary for diversity jurisdiction under

---

Attorney Renee Mobbs represents the Estate in its capacity as cross-claimant against Kinsley
Nyce and Roger Nyce. (*See* Doc. 20; Doc. 92 at 1.) This case includes a parallel struggle for
control of the Estate, which is pending before the Vermont Superior Court, Probate Division in
the case docketed *In re: Estate of Barbara A. Nyce*, No. 936-7-15 Cnpr. (*Compare* Doc. 77 at 2
(Kinsley Nyce asserts that he is "co-administrator") *with* Doc. 79-1 at 3 (Kindred insists that
Kinsley Nyce is not a "co-administrator").) Although Robert Brazil, an attorney associated with
Kindred, was originally appointed as administrator, it appears that Kinsley Nyce has replaced
Mr. Brazil as administrator for the purpose of defending against Kindred's claims and any other
claims filed by a creditor against the Estate. (*See* Doc. 35-1 at 2.) One of Mr. Nyce's first
actions was to amend the Estate's answer and cross-claims to remove all claims by the Estate
against himself and his brother Roger Nyce. (Doc. 41.) The two purported administrators are in
sharp disagreement over whether the Nyce brothers wrongfully converted their mother's
property during her lifetime or whether they were merely premature in taking property that they
would inherit a few months before her death.

28 U.S.C. § 1332. Notwithstanding that development, it appears that the court's jurisdiction is not jeopardized. "[O]nce a case that was initiated in state court has been removed properly, subsequent events that reduce the amount recoverable—such as the plaintiff's amendment of the complaint—will not defeat the federal court's subject-matter jurisdiction." Charles Alan Wright, et al., *Federal Practice & Procedure: Jurisdiction and Related Matters* § 3725.2 (4th ed.) (WL updated Apr. 2017) (citing cases, including *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938)). In 1988, after *St. Paul Mercury* was decided, 28 U.S.C. § 1447 was amended to include the following: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Kindred suggests that the change to § 1447 overturned the holding in *St. Paul Mercury*. (Doc. 91 at 4.)

The court rejects that argument for the reasons articulated in *Flynn v. Schwan's Consumer Brands Inc.*, No. 15 Civ. 4509(CM), 2015 WL 4560870, at *2 (S.D.N.Y. July 27, 2015), and *Purple Passion, Inc. v. RCN Telecom Services, Inc.*, 406 F. Supp. 2d 245, 245 (S.D.N.Y. 2005). The 1988 amendment to § 1447 was stylistic; cases since 1988 affirm that jurisdiction is not divested by subsequent events; and a conclusion to the contrary would facilitate gamesmanship and forum-shopping. *Flynn*, 2015 WL 4560870, at *2. The Supreme Court's decision in *Powerex Corp. v. Reliant Energy Services, Inc.*, 551 U.S. 224 (2007), is not to the contrary. *See Beck Chevrolet Co. v. Gen. Motors LLC*, No. 11 Civ. 2856 (AKH), 2012 WL 12925023, at *1 (S.D.N.Y. Aug. 23, 2012).

**B.     Real Party in Interest**

The court previously expressed its concern that Kindred might lack authority to pursue claims on behalf of the Estate against the Nyce sons. (Doc. 88 at 2.) Kinsley Nyce and the

Estate assert that Kindred is not the real party in interest to pursue claims for disgorgement and other equitable remedies intended to recover amounts allegedly taken improperly from Barbara Nyce by her sons. (Doc. 90 at 3.) They argue that, under the proposed Second Amended Complaint (Doc. 83-4), "there is no valid claim for attorney's fees, and there can be no valid fraudulent transfer claim." (Doc. 90 at 3.) They further argue that, if there were a valid fraudulent-transfer claim, the resulting money judgment would become a perfected claim against the Estate in the probate proceedings, thereby running afoul of the "probate exception" to federal jurisdiction. (*Id.*)

"The real party in interest principle . . . ensures that only a person who possesses the right to enforce [a] claim and who has a significant interest in the litigation can bring the claim." *Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.À.R.L.*, 790 F.3d 411, 420 (2d Cir. 2015) (alteration in original) (internal quotation marks omitted). Kindred is the proper party to pursue a claim for the attorneys' fees it incurred in obtaining relief from Medicaid's suspension of Barbara Nyce's coverage. It alleges that it paid the fees and that the suspension occurred due to misconduct by Kinsley and Roger Nyce. Whatever the merits of the claim may be—and these are discussed below—Kindred is the correct party to seek recovery of the legal expenses it paid out to address the suspension of benefits.

Kindred does not appear to have any interest (obviously) in the alleged conversion of Barbara Nyce's assets, both cash and real property, by her sons before her death. But unless the court is mistaken, it was Kindred which opened the estate and it is Kindred's chosen attorney Ms. Mobbs who is pursuing a claim for disgorgement against the heirs Kinsley and Roger Nyce for the ultimate benefit of the heirs Kinsley and Roger Nyce. (*See* Doc. 35-1 at 1 (June 21, 2016

probate court Order noting that Kindred opened the estate on Ms. Nyce's behalf as a principal creditor).)

The court intends no criticism of Ms. Mobbs for opening the estate. No one else had done so, and at the time the estate appears to have owed a substantial amount of money to Kindred for care provided to Barbara Nyce. Section 903(2) of Title 14 authorizes a creditor of the decedent to serve as administrator under certain conditions. The appointment of the administrator lies outside the authority of this court and is exclusively reserved to the probate court.

It now appears that Kindred is no longer a creditor. One point on which both sides agree is that the acceptance by Kindred of the Medicaid payment relieved the estate of any further obligation to pay for Barbara Nyce's care. For what purpose then does an attorney retained by Kindred remain active in this court seeking an accounting, disgorgement, and other remedies against the Nyce brothers? Before this case proceeds further, this court seeks clarification of the following question: does Attorney Mobbs have authority from the probate court to sue in this court to recover the money and property which she alleges the Nyce brothers took improperly from their mother during her last year of life? This claim for disgorgement is entirely distinct from Kindred's own claim against the Nyce brothers for legal fees.

Clarification may take the form of an order from the probate court. The parties may stipulate to it (unlikely) or there may be some resolution which the court does not foresee. But the pursuit of the Nyce brothers by counsel chosen by Kindred on behalf of the Nyce brothers (and other heirs if there are any) is an issue which must be resolved before the court and the parties can plan for a trial. The court requires a filing by Attorney Mobbs on this issue within 30 days. Kinsley Nyce may respond within 15 days.

## II.    Kindred's Motion to Amend

Kindred's proposed Second Amended Complaint would eliminate the breach-of-contract claim, and allege only a single cause of action under the Vermont Fraudulent Transfer Act (VFTA), 9 V.S.A. §§ 2285–2295. (*See* Doc. 83-4.) Kindred alleges that, when Barbara Nyce was admitted to its nursing home in March 2014, Defendants agreed to inform Kindred of any changes in her assets and to pursue obtaining Medicaid coverage on her behalf. (*Id.* ¶ 13.) Kindred alleges that Defendants did neither of those things. Kindred asserts that Barbara Nyce's sons fraudulently transferred her assets to enrich themselves. (*See id.* ¶¶ 17–19, 29.) According to Kindred, Defendants failed to secure Medicaid benefits on behalf of Barbara Nyce, and Kindred itself incurred expenses in obtaining those benefits. (*Id.* ¶¶ 31, 39.)

Regarding relief requested, Kindred notes that Barbara Nyce's monthly "patient share" was allowed a deviation for payment of non-covered medical expenses owed to Burlington Health & Rehab, and that Defendants do not owe any payment for the "patient share." (*Id.* ¶ 43.) With the balance of the nursing home bill eliminated, Kindred seeks only payment of attorney fees and costs it incurred in obtaining Medicaid coverage for Barbara Nyce. The amount of this claim is $68,007.74. (*Id.* ¶¶ 44, 61.) Kindred also seeks punitive damages and a broad order against the two Nyce sons enjoining them from dissipating Barbara Nyce's funds, selling her home, spending fire insurance proceeds, and recovering funds taken by the Nyce sons from their mother's bank accounts. (*Id.* at 15–16.)

Under Federal Rules of Civil Procedure Rule 15(a)(2), a party may amend its pleading with the court's leave, which "should freely give leave when justice so requires." Leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue

prejudice to the non-moving party." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)).

Kinsley Nyce and the Estate oppose the proposed amendment, arguing that it would be futile for four reasons. First, they argue that there is no basis for recovery of fees and costs under the American Rule. Second, they argue that there is no basis for recovery of fees and costs under the third-party litigation exception. Third, Kinsley Nyce asserts that he cannot be personally liable for fees and costs because there is nothing in the Durable Power of Attorney that creates liability. Finally, Kinsley Nyce maintains that Kindred has failed to state a fraudulent transfer claim against him. (*See* Doc. 89.)[2]

## A.    American Rule

Kindred does not dispute that Vermont follows the American Rule,[3] under which "each party bears the cost of its own attorney's fees absent a statutory or contractual provision authorizing an award of attorney's fees." *Town of Milton Bd. of Health v. Brisson*, 2016 VT 56, ¶ 29, 147 A.3d 990. Kindred also does not argue that a statute or contract provides for attorneys'

---

[2] In addition to the four reasons advanced in their opposition to the motion to amend, Kinsley Nyce and the Estate assert—as noted above—that, if there were a valid fraudulent-transfer claim, the resulting money judgment would become a perfected claim against the Estate in the probate proceedings, thereby running afoul of the "probate exception" to federal jurisdiction. (Doc. 90 at 3.) The court discussed the probate exception in a prior decision. (Doc. 34 at 10–11.) The exception prohibits federal courts from administering a probate matter or exercising control over a res in the custody of a state court. Here, awarding a money judgment to the Estate would involve neither of those circumstances.

[3] The parties agree that Vermont law applies to the issue of attorneys' fees. That appears to be correct. The court's jurisdiction in this action is premised on diversity of citizenship. (*See* Notice of Removal, Doc. 1 at 1.) "[A]ttorneys' fees are considered substantive under the *Erie* doctrine, and should be analyzed under state law in diversity cases." *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 213 (S.D.N.Y. 2006).

fees. Instead, Kindred maintains that such an award is warranted under the "bad faith" exception to the American Rule. (*See* Doc. 91 at 5)

## B. "Bad Faith" Exception

In *Albright v. Fish*, 138 Vt. 585, 591, 422 A.2d 250, 254 (1980), the Vermont Supreme Court stated that, "where the wrongful act of one person has involved another in litigation with a third person or has made it necessary for that other person to incur expenses to protect his interests, litigation expenses, including attorney's fees, are recoverable." The exception recognized in *Albright* is, as Kinsley Nyce and the Estate point out, a "third-party" exception. For *Albright* to apply, the action "for which attorney's fees are claimed as consequential damages [must be] brought or defended by third persons—that is, persons not privy to the contract, agreement or events through which the litigation arises." *Albright*, 138 Vt. at 591, 422 A.2d at 255 (quoting *Armstrong Constr. Co. v. Thomson*, 390 P.2d 976, 979 (Wash. 1964)). Kinsley Nyce and the Estate assert that the "third-party" exception cannot apply because Kindred was in contractual privity with Barbara Nyce. (Doc. 89 at 3.) Kindred apparently agrees that, since Kinsley and Roger Nyce served as their mother's agent under the power of attorney, all Defendants are in privity of contract. (Doc. 91 at 7.)

The apparent presence of privity between all parties would distinguish this case from *Albright*. But Vermont recognizes at least one other variant of the "bad faith" exception that does not depend on the presence of a third party.[4] In *In re Gadhue*, 149 Vt. 322, 544 A.2d 1151 (1987), the Vermont Supreme Court expanded the exception articulated in *Albright* to include

---

[4] Other variants and exceptions are by no means ruled out; as the Vermont Supreme Court has recognized, "exceptions [to the American Rule] are flexible, not absolute, and [may be] extended on [appropriate] occasion[s]." *Appeal of Gadhue*, 149 Vt. 322, 327, 544 A.2d 1151, 1154 (1987) (alterations in original) (quoting *Harkeem v. Adams*, 117 N.H. 687, 690, 377 A.2d 617, 619 (1977)).

8

"situations where the bad faith action of one person caused another person to incur litigation expenses in unnecessary judicial proceedings with the wrongful actor." *Brisson*, 2016 VT 56, ¶ 29. The Vermont Supreme Court has recently reaffirmed that it recognizes an exception to the American Rule, without saying that the exception depends on the presence of a third party. *See Depot Square Pizzeria, LLC v. Dep't of Taxes*, 2017 VT 29, ¶ 7 (citing *Gadhue*) ("[A]n exception to the American Rule may occur when one of the litigants has acted in bad faith.").

Under both *Albright* and *Gadhue*, "the exception is triggered only by conduct that could be described as in bad faith, vexatious, wanton, oppressive, or unreasonably obstinate." *Id.* ¶ 30. "[T]he equitable power to award attorney's fees as an exception to the American Rule 'must be exercised with cautious restraint . . . only in those exceptional cases where justice demands an award of attorney's fees.'" *Id.* ¶ 31 (quoting *Agency of Nat. Res. v. Lyndonville Sav. Bank & Trust Co.*, 174 Vt. 498, 501, 811 A.2d 1232, 1236 (2002) (mem.)). The court makes no findings or conclusions about whether the facts of this case are sufficiently exceptional to warrant application of the bad-faith exception to the American Rule. For present purposes, it is sufficient to note that, while the presence of privity between the parties may preclude application of the *Albright* variant of the bad-faith exception, it does not preclude application of the *Gadhue* variant.

## C.     Kinsley Nyce's Personal Liability—Power of Attorney

Kinsley Nyce argues that the Durable Power of Attorney under which he served as his mother's agent includes no terms that would "create[] separate legal liability for attorney's fees for Mr. Nyce as her attorney-in-fact, or which makes him a guarantor of debts." (Doc. 89 at 3.) That may be so, but as noted above, Kindred does not seek attorney's fees on the basis of any contractual provision. The request is premised on the bad-faith exception to the American Rule.

### D. Fraudulent-Transfer Claim Against Kinsley Nyce

Finally, Kinsley Nyce asserts that Kindred has failed to state any fraudulent-transfer claim against him for two reasons. (Doc. 89 at 3–4.) First, he summarily asserts that Barbara Nyce was not a "debtor," and argues that without a debtor, there can be no VFTA claim.[5] The court concurs that the VFTA contemplates the presence of at least one "debtor"; the statutory provisions defining fraudulent transfers refer to transfers made or obligations incurred by a "debtor." 9 V.S.A. §§ 2288, 2289. The VFTA defines "debt" as "liability on a claim," 9 V.S.A. § 2285(5), so a "debtor" is a person who is liable on a claim.[6]

But Kindred sufficiently alleges that Barbara Nyce was a debtor. According to Kindred, Barbara Nyce was a debtor because she was "liable to [Kindred] for the skilled nursing services provided to Defendant Barbara L. Nyce as well as Plaintiff's attorneys' fees and costs." (Doc. 83-4 ¶ 60.) Even though Kindred is no longer seeking any compensation for the nursing services provided, the allegations are that Barbara Nyce was a debtor at the time that the alleged transfers occurred.

Kinsley Nyce's second argument is that, under *In re Montagne*, 417 B.R. 232 (D. Vt. 2009), actual intent to defraud is a necessary element under the VFTA, but Kindred makes no allegation that Barbara Nyce made any transfer with that intent. (Doc. 89 at 4.) The court rejects that argument for two reasons. First, *Montagne* does not stand for the proposition that Kinsley

---

[5] This appears to be a variation on Kinsley Nyce's previous attack on the fraudulent-transfer claim on the grounds that *he* was not a debtor. The court rejected that argument, concluding that, even if Kinsley is not himself a debtor, "he is allegedly a transferee and may be a defendant for the purposes of the fraudulent-transfer claim." (Doc. 34 at 8.)

[6] The Uniform Fraudulent Transfer Act, on which the VFTA is modeled, includes that explicit definition of "debtor." *See* Unif. Fraudulent Transfer Act § 1(6) (1984). It is implicit in the VFTA.

Nyce says it does. As the *Montagne* court observed, the VFTA statute "provides *two* bases for finding that a transfer is fraudulent—either the debtor effected the transfer with 'actual intent' to defraud a creditor, *or* the debtor did not receive reasonably equivalent value for the transferred property and the elements of either § 2288(a)(2)(A) or (B) are satisfied." *In re Montagne*, 417 B.R. at 238 (emphasis added). The latter type—"generally described as a 'constructively fraudulent transfer,'" *id.*—was not analyzed in the September 30, 2009 *Montagne* decision,[7] but it is precisely what Kindred alleges. (*See* Doc. 83-4 ¶ 29 (alleging that Barbara Nyce transferred her interest in real property to her sons for $10); *id.* ¶ 53 (alleging that Kinsley and Roger Nyce failed to provide compensation or fair market value for the funds transferred to them); *id.* ¶ 57 (alleging that, at the time of transfers, Defendants knew or reasonably should have known that Barbara Nyce would incur substantial medical expenses and debt).)[8]

Moreover, Kindred's allegations fairly allege actual intent to defraud. To determine actual intent under § 2288(a)(1), courts consider the factors (often called "badges of fraud") listed in § 2288(b). *Montagne*, 417 B.R. at 238. Here, Kindred alleges several facts relevant to those factors. (*See, e.g.*, Doc. 83-4 ¶ 55 (alleging that Kinsley and Roger Nyce are Barbara Nyce's sons—relevant to § 2288(b)(1)); *id.* ¶ 58 (alleging that the transfers were substantially all of Barbara Nyce's assets—relevant to § 2288(b)(5)); *id.* ¶ 59 (alleging that, as a result of the transfers, Barbara Nyce became insolvent—relevant to § 2288(b)(9)); *id.* ¶¶ 48, 52 (alleging that

---

[7] *See id.* at 240 ("[T]his memorandum of decision will address only whether either party is entitled to judgment as a matter of law on the claim of actual fraud under § 2288(a)(1).").

[8] Compare those allegations to the requirements for constructive fraudulent transfer under 9 V.S.A. § 2288(a)(2)(B): debtor made a transfer without receiving reasonably equivalent value in exchange, and intended to incur, or believed or reasonably should have believed, that she would incur debts beyond her ability to pay.

transfers occurred some months before Barbara Nyce was admitted to Kindred's facility, or while she was a resident there with an outstanding balance—relevant to § 2288(b)(10).)

Having rejected all of Defendants' arguments on the question of futility, the court will grant Kindred's motion to amend.

## III.    Kindred's Motion to Strike or Dismiss Counterclaims

As discussed above, Kindred alleges that Defendants have engaged in conduct that would justify an exception to the American Rule. For their part, the Estate and Kinsley Nyce allege in their counterclaims that *they* have unnecessarily incurred litigation expenses defending against Kindred's claims. They assert that, after a decision by the Vermont Agency of Human Services (AHS) qualifying Barbara Nyce for Medicaid reimbursement, Kindred was paid $33,694.29 in August 2016. (Doc. 69 at 6.) They allege, apparently in error, that the decision issued on July 14, 2015. It appears that the decision actually issued a year later on July 14, 2016. They further allege that Kindred never informed Kinsley Nyce of that determination or the receipt of Medicaid payment, and instead "attempted to double dip by continuing with litigation of its claims." (*Id.*) According to the Estate and Kinsley Nyce, Kindred's counsel instructed the State of Vermont not to speak with Kinsley Nyce or his counsel. (*Id.*) They assert that, as a result, they have incurred attorneys' fees and litigation expenses defending against Kindred's claims, and pursuing a fair hearing appeal with the State of Vermont regarding Barbara Nyce's patient share obligation. (*Id.* at 7.)

Kindred moves to strike or dismiss the counterclaims, arguing that the allegations in the counterclaims are "completely and arguably knowingly false." (Doc. 74 at 3.) Kindred asserts that the AHS decision was issued on July 14, 2016 (not 2015). (*Id.*) Asserting that the counterclaims are premised on the decision having been issued on July 14, 2015, Kindred requests that those claims be stricken or dismissed. Defendants oppose the motion, arguing that

it is procedurally deficient, and that, even though the AHS decision was issued on July 14, 2016, the Estate's counterclaims are well-founded in fact and law. (Doc. 77.)

In its March 28, 2017 Entry Order, the court asked the parties what remained of the counterclaims. (Doc. 88 at 3.) Kinsley Nyce, the Estate, and Kindred agree that Kindred has moved to strike the counterclaims on the grounds that they fail to state a cause of action. (Doc. 90 at 4; Doc. 91 at 7.) The Estate in its capacity as cross-claimant against Kinsley and Roger Nyce asserts that the counterclaims are moot in light of Kindred's Second Amended Complaint. (Doc. 92 at 3–4.)

The court is not convinced that the counterclaims are moot. Even if Kindred is no longer seeking to recover any balance due for Barbra Nyce's patient responsibility, it appears to the court that the counterclaims allege that, for some period of time, Kindred was seeking such a recovery even though it had already been paid. Nor is the court convinced that, whatever the procedural grounds for Kindred's motion to strike or dismiss, the counterclaims must necessarily fail in light of the now-conceded fact that the AHS decision was issued on July 14, 2016 (not 2015). As best the court can tell, Kinsley Nyce and the Estate are alleging that Kindred's conduct after July 14, 2016 caused unnecessary legal expense. (*See* Doc. 69 at 6 (alleging that, through November 21, 2016 (the date the counterclaims were filed), Kindred failed to inform Kinsley Nyce of the determination of Medicaid eligibility or the receipt of Medicaid payment); *see also* Doc. 77.) More clarity may be forthcoming after pleading is complete on the Second Amended Complaint. For now, however, it is enough to note that the counterclaims are not premised on the AHS decision having been issued on July 14, 2015.

## IV.   The Estate's Motion for Partial Summary Judgment

The Estate seeks partial summary judgment as to paragraphs 42 and 43 in Kindred's

Amended Complaint. (Docs. 77, 78.) Those paragraphs of the October 26, 2016 Amended

Complaint alleged as follows:

> 42.   If Plaintiff accepts the Medicaid payment, Plaintiff is currently owed a
> remaining balance of $37,318.63 and attorney's fees, interest and costs. . . .
>
> 43.   If Plaintiff rejects Medicaid . . ., the private pay amount of medical bills
> owed is approximately $137,586.92 plus attorneys' fees, interest and costs.

(Doc. 64 ¶¶ 42, 43.) The Estate asserts that both of those paragraphs rest on a claim that

Kindred owes a Medicaid patient share, but that Kindred has not been responsible for any patient

share since October 17, 2016, when DCF held that no patient share is owed. (Doc. 77 at 7.)

Kindred asserts that, if the court grants its motion to file a Second Amended Complaint, then the

Estate's motion for partial summary judgment will be moot. (*See* Doc. 79-1.) The Estate does

not offer any analysis on the mootness question, but instead argues that Kindred's opposition to

the motion for partial summary judgment was filed too late. (*See* Doc. 80.)

For the reasons stated above, the court is granting Kindred's motion to amend. In its

Second Amended Complaint, Kindred states that it accepted the Medicaid payment in August

2016, and that as a result of DCF's October 17, 2016 decision, Barbara Nyce no longer owes

Kindred a balance of $37,318.63. (Doc. 83-4 ¶¶ 42, 43.) The court concludes that, in light of the

Second Amended Complaint, the Estate's motion for partial summary judgment as to

paragraphs 42 and 43 of the Amended Complaint is moot.[9]

---

[9] The court agrees that, under L.R. 7(a)(3)(A), Kindred's opposition was untimely. The
Estate's motion for partial summary judgment was filed and electronically served on January 17,
2017. (Doc. 78; Doc. 78-2.) Kindred filed its opposition on March 9, 2017. (Doc. 79.) Failing
to comply with deadlines is not good practice. But the Estate does not articulate how it might
have been prejudiced by the untimely opposition, and it was able to file a reply (Doc. 80). In any

## V. Case Management

The court now addresses what type of hearing is required to bring this case to a conclusion. The following claims remain:

1. Kindred's complaint for attorneys' fees incurred in obtaining a waiver of the Medicaid penalty days imposed as a result of transfers of money and real property out of Ms. Nyce's estate for less than fair value. Plaintiff alleges that Defendants Kinsley and Roger Nyce engaged in a fraudulent transfer within the meaning of the VFTA. As a consequence of the fraudulent transfer, Kindred incurred legal fees in litigating the Medicaid disqualification issue before the Vermont Department of Children and Families. (*See* Doc. 83.)

2. Cross-claims by the Estate against Kinsley and Roger Nyce for taking the property of their mother without legal authority. The claims include a request for an accounting and claims for breach of fiduciary duty, conversion, embezzlement, declaratory judgment, and constructive trust. (*See* Doc. 20.) This claim is subject to the above request for clarification regarding real party in interest.

3. Counterclaim against the Estate by Kinsley Nyce. Mr. Nyce seeks reimbursement on a quantum meruit basis for expenses he incurred following a fire at his mother's home. (Doc. 37.)

4. Third-party claim against Attorney Stuart Bennett and two related law firms. Kinsley Nyce seeks indemnification from his mother's attorney Stuart Bennett for any losses he

---

case, even without Kindred's opposition, the outcome would be the same. The court can see that the allegations in paragraphs 42 and 43 of the Amended Complaint have been eliminated in the Second Amended Complaint.

may incur as the result of a defect in the execution by his mother of the power of attorney which he used to transfer title of her home to himself and his brother. (Doc. 37.)

5. Counterclaim by the Estate and Kinsley Nyce against Kindred seeking to recover attorneys' fees and costs incurred in defending against claims filed against him by Kindred. (Doc. 47.)

The court intends to set these remaining claims up for a trial at the earliest opportunity. The court recognizes that discovery has been postponed repeatedly due to difficulties serving Roger Nyce. (*See* Doc. 68.) A prior attempt at service by publication (*see* Doc. 39) did not comply with Vt. R. Civ. P. 4(g)'s requirement that publication be made for two or more successive weeks. It appears that the most recent efforts to accomplish service by U.S. mail and by tacking (*see* Doc. 76) have been unsuccessful. (*See* Docs. 72, 73, 75 (non-party found documents near his home, is unable to provide them to the intended recipient, and returned them to the court).) Within 30 days, Kindred and the Estate (as cross-claimant against Kinsley and Roger Nyce) shall report to the court on their progress serving Roger Nyce.

## Conclusion

Kindred's Motion to Amend (Doc. 83) is GRANTED.

Kindred's Motion to Strike or Dismiss Counterclaims (Doc. 74) is DENIED.

The Estate's Motion for Partial Summary Judgment (Doc. 78) is DENIED as moot.

Within 30 days, Kindred and the Estate (as cross-claimant against Kinsley and Roger Nyce) shall report to the court on their progress serving Roger Nyce.

Within 30 days, Attorney Mobbs shall file material addressing whether she has authority from the probate court to sue in this court to recover the money and property which she alleges

the Nyce brothers took improperly from their mother during her last year of life.  Kinsley Nyce

may respond within 15 days.

Dated at Rutland, in the District of Vermont, this 31 day of May, 2017.

Geoffrey W. Crawford, Judge
United States District Court